

NUMBER 13-10-283-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF L.V., J.M., A.M., MINOR CHILDREN

### On appeal from County Court at Law No. 5
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela**
**Memorandum Opinion by Justice Vela**

This is an appeal from a judgment terminating appellant, Johnny Montalvo's, parental rights to A.M. and J.M., two of his children. The order terminates his parental rights under sections 161.001(1)(D), (E), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), and (O) (Vernon Supp. 2010). The trial court also

found that termination is in the children's best interest. *See* § 161.001(2). The case was tried jointly with that of Stephanie Perez a/k/a Stephanie Flores, the mother of A.M. and J.M. The trial court terminated Stephanie's parental rights to A.M., J.M., and L.V., a child born of a previous relationship.[1] There were accusations that L.V. had been sexually abused by one of Stephanie's previous boyfriends and by appellant's brother. The trial court found that appellant failed to protect L.V. from exposure to sexual abuse and that exposure to sexual abuse endangered all of the other children living in the home.

By five issues, appellant argues that the evidence was legally and factually insufficient to establish that: (1) appellant knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; (2) appellant engaged in conduct that endangered the physical or emotional well-being of the children; (3) appellant knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (4) appellant failed to comply with a service plan; and (5) termination of appellant's parental rights was in the children's best interest. We affirm.

## I. BACKGROUND

Appellant has three biological children; two of them, A.M. and J.M., are the children who are the subjects of this case. The third, S.M., is the youngest and the subject of a separate proceeding. Stephanie, appellant's live-in girlfriend, has five children, including A.M. and J.M. On March 7, 2008, L.V., J.M., and A.M. were brought into the care of the Department of Family and Protective Services (the "Department") after

---

[1] On February 17, 2011, this Court severed Stephanie's case and it remains pending as cause number 13-11-00080-CV.

the birth of A.M., who tested positive for cocaine at birth. Stephanie also testified positive for cocaine on the same date. Appellant also tested positive for cocaine around this time.

The children were later returned to the home, but were removed from the home again in April of 2009, based upon allegations that Stephanie had physically abused A.M. by breaking the child's arm while removing her from a child safety seat and by slapping the child. Appellant was not present when these events occurred. At that time, Stephanie's aunt, Beatrice Caceres, was another person who took care of A.M. The trial court found that Stephanie was the cause of physical injury to A.M. by causing a slap-mark bruise on her cheek, scarring the soft tissue of A.M.'s mouth, and by fracturing her arm.

Stephanie used cocaine within a month before A.M. was born. She left appellant for a time in January or February of 2008, because she believed appellant had cheated on her. She admitted that she began using cocaine at age sixteen. Stephanie tested positive for cocaine in September and December of 2005 as well as January, February and March of 2006. J.M., appellant's son, was born October 12, 2006. Stephanie admitted that all three of appellant's children had been exposed to cocaine in utero.

Appellant tested positive for cocaine in 2008. He did not test positive at the other times when tested. Angela Craig, Court Appointed Special Advocate ("CASA") and guardian ad litem for the children, testified that Stephanie had discussed appellant's use of drugs in court and was concerned about going home to him. Stephanie, on other occasions, denied that she used drugs with appellant.

Appellant admitted that he was aware Stephanie tested positive for cocaine in October and December of 2005 and January of 2006. He also knew that she was using cocaine while she was pregnant with A.M. He agreed that A.M's developmental problems were attributable to Stephanie's cocaine abuse. He never called the Department or the police. When appellant was asked what steps he took to assure that Stephanie would not use cocaine, appellant stated: "Yes, I did with some arguments that we had. I just thought it wasn't good for her to leave home." He also stated that he could not control Stephanie's drug use. There was no evidence that appellant ever called either the police or the Department with respect to Stephanie's drug use. In fact, he stated that he planned to marry Stephanie when she divorced her husband.

The case was tried to the court, which terminated the parental rights of both appellant and Stephanie to A.M. and J.M.

## II. STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.–Corpus Christi 2006, no pet.). "Consequently, termination proceedings must be strictly scrutinized, and 'involuntary termination statutes are strictly construed in favor of the parent.'" *In re D.S.P.*, 210 S.W.3d at 778 (quoting *Holick*, 685 S.W.2d at 20).

4

Due process requires that termination be supported by clear and convincing evidence. *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.−El Paso 2007, no pet.) (citing *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002)); *see* TEX. FAM. CODE ANN. § 161.001. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re E.M.E.*, 234 S.W.3d at 73. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

In reviewing the legal sufficiency of the evidence supporting parental termination, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have "formed a firm belief or conviction about the truth of the matter on which the movant in a termination proceeding bore the burden of proof." *In re D.S.P.*, 210 S.W.3d at 778 (citing *In re J.F.C.*, 96 S.W.3d at 266). We must assume that the fact finder resolved disputed facts in favor of its finding, if it was reasonable to do so and must disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *Id.*; *see In re E.M.E.*, 234 S.W.3d at 73. "This does not mean we must disregard all evidence that does not support the finding, but if we determine that no reasonable fact finder could have formed a firm belief or conviction that the matter to be proven is true, then the evidence is legally insufficient." *In re E.M.E.,* 234 S.W.3d at 73.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209

5

S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief about the truth of the matter on which the movant bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re T.B.D.*, 223 S.W.3d 515, 517 (Tex. App.−Amarillo 2006, no pet.). If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

### III. APPLICABLE LAW

Before terminating parental rights, the trial court must find that: (1) the parent committed an act prohibited by section 161.001(1) of the family code, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re N.A.F.*, 282 S.W.3d 113, 115 (Tex. App.−Waco 2009, no pet.). The fact finder must find that both elements are established by clear and convincing evidence; proof of one element does not relieve the movant of the burden of proving the other. *In re N.A.F.,* 282 S.W.3d at 115-16 (citing *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976)) (other citations omitted).

Here, the trial court found that clear and convincing evidence existed with regard to three grounds for termination that were sought with regard to appellant in this case.[2] Only one ground, in addition to a best interest finding however, is necessary to support a judgment in a parental-rights termination case. *In re E.M.M.,* 221 S.W.3d 815, 821 (Tex.

---

[2]The trial court terminated appellant's parental rights, determining that the Department had introduced clear and convincing evidence of violations of sections 161.001(D), (E) and (O) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(D), (E) and (O) (Vernon Supp. 2010).

App.–Fort Worth 2007, no pet.); *see In re A.V.*, 113 S.W.3d 355, 302 (Tex. 2003). Therefore, when termination is based on multiple grounds under section 161.001(1), as it was here, we must affirm the termination order if the evidence is sufficient to support termination based on any one of the grounds found by the district court.

## IV. ANALYSIS

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D). Endangerment means to expose to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.–Fort Worth 2000, pet. denied). Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *In re J.T.G.*, 121 S.W.3d at 125. Parental and caregiver illegal drug use supports a conclusion that the children's surroundings endanger their physical or emotional well-being. *Id.*; *see In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.–San Antonio 1998, pet. denied).

The relevant conduct includes not only the parents' conduct as evidenced by the parents' acts, but also the parents' omissions or failures to act. *In re M.J.M.L.*, 31 S.W.3d

7

347, 351 (Tex. App.−San Antonio 2000, pet. denied); *Edwards v. Tex. Dep't of Protective & Regulatory Servs.*, 946 S.W.2d 130, 138 (Tex. App.−El Paso 1997, no writ), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267 n. 39. Furthermore, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.−Fort Worth 2001, no pet.).

With respect to section 161.001(D), the trial court found that Stephanie used illegal drugs while pregnant with all of her children who were fathered by appellant and that the illegal drug use endangered the physical or emotional well-being of all of the children in the home. The court found that appellant had taken no steps or made any demonstrable efforts to prevent the illegal drug use by Stephanie. The court determined that by his failure to prevent the illegal drug use, appellant has endangered the physical or emotional well-being of the children. The trial court also found that appellant endangered the physical or emotional well-being of the children by arguing, yelling and screaming in front of the children.

The trial court further found that appellant has remained adamant that he will remain with Stephanie despite her repeated drug use and despite medical evidence that the injuries suffered by A.M. were from child abuse at the hands of Stephanie. The trial court found that appellant has not demonstrated an ability to provide for future physical or emotional safety of the children if left in his care.

Appellant argued, in response, that there was no evidence that he behaved knowingly as it related to endangering conditions. He argued that the home was clean,

Stephanie's drug use allegedly occurred away from the home, and occasional arguing that does not involve physical violence does not endanger the physical and emotional well-being of the children. Appellant also argued that while his brother sexually molested L.V. in his home, there is nothing in the record to prove that appellant knowingly permitted the abuse because the evidence was that the abuse occurred while he and Stephanie were asleep upstairs.

A pattern of drug abuse, including drug use during the pregnancy of another child, will support a finding of conduct endangering a child even if there is no evidence that the drug use injured the child. *Vasquez v. Tex. Dep't of Protective and Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.−Houston [1st Dist.] 2005, pet. denied). Further, a history of drug abuse is conduct that subjects the children to a life that is uncertain and unstable, endangering their physical and emotional well-being. *Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d at 138; *see also In re S.K.A.*, No. 10-08-00347-CV, 2009 WL 2645027 at *9 (Tex. App.−Waco Aug. 19, 2009, no pet.) (stating that father's failure to take any action to protect unborn child from mother who used drugs during pregnancy was sufficient to establish that he knowingly allowed children to remain in condition and surroundings that endangered the child's well-being). One parent's drug-related endangerment of the child may be imputed to the other parent. *Edwards*, 946 S.W.2d at 138; *see also In re E.J.P.*, No. 06-04-00131-CV, 2005 WL 2138573 at *4 (Tex. App.−Texarkana Sept. 25, 2005, no pet.) (mem. op.).

Appellant's failure to take any action to protect his children from Stephanie's drug abuse is sufficient to establish that he knowingly allowed the children to remain in

conditions or surroundings that endangered their physical well-being. All three of appellant's children were exposed to cocaine in utero. Appellant himself has tested positive for cocaine. Stephanie relapsed twice. She was pregnant and appellant was the father. Lisa Ramirez, Stephanie's drug counselor, suggested at trial that Stephanie's interaction with appellant "acted more like a trigger or stress." Appellant knew about the drug abuse from October of 2005 until at least February of 2008, yet he never attempted to protect his children. It is undisputed that Stephanie's drug use endangered the children. The evidence is thus legally and factually sufficient to support the trial court's finding on the ground that appellant knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well being. We overrule appellant's first issue. Because the evidence at trial was both factually and legally sufficient to support the trial court's decision to terminate appellant's parental rights under section 161.001(1)(D) of the family code, we do not address appellant's remaining issues that attack the trial court's decision to also terminate appellant's rights under sub-sections 161.001(E) and (O) of the family code. *See* TEX. R. APP. P. 47.1.

By appellant's fifth issue, he argues that the Department failed to meet its burden to prove by clear and convincing evidence that termination of appellant's rights to the two children were in their best interest. In determining whether termination is in a child's best interest, the fact-finder may consider the following non-exhaustive list of factors outlined by the Texas Supreme Court: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the person seeking custody; (5)

10

the programs available to assist those persons in promoting the best interest of the child; (6) the plan for the child by those individuals or by the agency seeking custody; (7) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate; (8) the stability of the home or proposed placement; and (9) any excuse for the acts or omissions of the parents. *Holley*, 544 S.W.2d at 371-72; *see In re D.M.,* 58 S.W.3d at 814. "'Best interest' does not require proof of any unique set of factors, nor does it limit proof to any specific factors." *In re D.M.,* 58 S.W.3d at 814. The party seeking termination need not prove that each of the *Holley* factors favors termination, and the same evidence of acts or omissions used under section 161.001(1) of the family code may be probative in determining the best interests of the child. *See In re A.A.A.,* 265 S.W.3d 507, 516 (Tex. App.−Houston [1st Dist.] 2008, pet. denied). Specifically, cases that involve endangering drug abuse are not the types of cases where the parent's wrongful conduct should be ignored. *See Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 101-02 (Tex. App.−Houston [1st Dist.] 2006, no pet.); *In re L.M.*, 104 S.W.3d 642, 648 (Tex. App.−Houston [1st Dist.] 2002, no pet.). Evidence of a parent's unstable lifestyle can support the conclusion that termination is in the child's best interest. *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.−Fort Worth 2007, no pet.). In particular, a parent's drug use and failure to comply with a family service plan support a finding that termination is in the best interest of the child. *Id.*

Appellant argues that he has committed himself to preventing his children from seeing Stephanie if the trial court terminated her rights, but not his. He also testified at trial that he planned to marry Stephanie. While the children are now doing well in their

11

foster placements, appellant urges that continuing changes in their placement will present a significant emotional risk to the children. He further claims that he has taken parenting classes and has adequate skills to manage S.M. and J.M.

Although evidence of past misconduct or neglect is not sufficient to show unfitness, a fact finder may permissibly infer that an adult's future conduct may well be measured by recent deliberate past conduct as it relates to the same or a similar situation. *Jordan v. Dossey*, 325 S.W.3d 700, 732 (Tex. App.−Houston [1st Dist.] 2010, pet. filed); *see May v. May*, 829 S.W.2d 373, 377 (Tex. App.−Corpus Christi 1992, writ denied). Here, the trial court could have reasonably concluded that appellant knew for many years that Stephanie abused cocaine, yet the three children he fathered were subjected to cocaine in utero. Appellant did not believe that Stephanie had abused A.M., nor did he believe that L.V. was molested by his brother.

Craig testified that she believed that appellant put his needs and those of Stephanie above the needs of the children. With respect to appellant's parenting ability, Craig opined that she did not believe appellant's behavior was conducive to forming a bond with A.M. Although appellant had bonded with J.M., he could not control his behavior. Craig opined that she did not believe that either parent demonstrated the skills to keep the children safe and believed termination was in the best interest of the children.

Craig also stated that A.M. and J.M. have flourished in foster care. She believed the best plan was for the children to be adopted. The evidence was legally and factually sufficient to support the best interest finding. We overrule issue five.

12

## V. Conclusion

Having ruled on all of the dispositive issues, we affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
24th day of February, 2011.